# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

### CASE NO. 15-1976 – Alley v. Innovation Law Group, Ltd. (OPPOSITION NO. 91202418)

| | |
|---|---|
| Ryan E. Alley, dba | \| |
|     Ryan Alley Intellectual Property Law | \| |
| | \| |
|     Appellant, | \| |
| | \| |
| v. | \| |
| | \| |
| Innovation Law Group, Ltd, | \| |
| | \| |
|     Appellee. | \| |

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board.

## PRINCIPAL BRIEF FOR APPELLANT

Ryan E. Alley
Ryan Alley Intellectual Property Law
PO Box 3698
Arlington, VA 22203
(571) 335-7300 (Telephone)
(571) 732-1878 (Facsimile)
ryan@alleylegal.com

Appellant

FORM 9.  Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Alley                                  **v.**     Innovation Law Group, Ltd.

Case No.    15-1976

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

appellant                        certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

Ryan E. Alley, dba Ryan Alley Intellectual Property Law

2.      The name of the real party in interest (Please only include any real party in interest NOT identified in Question 3. below) represented by me is:

Ryan E. Alley

3.      All parent corporations and any publicly held companies that own 10 percent of the stock of the party or amicus curiae represented by me are listed below. (Please list each party or amicus curiae represented with the parent or publicly held company that owns 10 percent or more so they are distinguished separately.)

None

4.  ☒   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

Ryan Alley Intellectual Property Law
Ryan E. Alley, attorney

September 3, 2015                          /s/ Ryan Alley
_____          _____
         Date                                    Signature of counsel

Please Note: All questions must be answered

                                                Ryan E. Alley
cc: _____          _____
                                              Printed name of counsel

Reset Fields

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...........................................................................ii

I.      STATEMENT OF RELATED CASES.................................................1

II.     JURISDICTIONAL STATEMENT…..................................................1

III.    STATEMENT OF THE ISSUES...........................................................1

IV.     STATEMENT OF THE CASE................................................................2

            Statement of the Facts...............................................................3

V.      SUMMARY OF THE ARGUMENT…...................................................14

VI.     ARGUMENT..............................................................................................15

        A.      Standard of Review...................................................................15

        B.      The Board Found Similarity Between the Marks
                Based Only on Dissected, Commonplace Elements...................16

        C.      The Board Unreasonably Concluded there was no
                Opportunity for Confusion to Occur..........................................25

        D.      The Board Failed to Consider Evidence and Argument
                On Relevant *Dupont* Factors......................................................30

        E.      Conclusion..................................................................................33

ADDENDUM

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

**CASES**

In re E.I. du Pont Nemours & Co., 476 F.2d 1357 (C.C.P.A. 1973).......................*Passim*

Cunningham v. Laser Golf Corp., 222 F.3d 943 (Fed. Cir. 2000)...................................16

Hewlett-Packard Co. v. Packard Press, Inc., 281 F.3d 1261 (Fed. Cir. 2002)...............16

On-Line Careline, Inc. v. Am. Online, Inc.,
    229 F.3d 1080 (Fed. Cir. 2000).........................................................................16, 27

Coach Services, Inc. v. Triumph Learning L.L.C.,
    668 F.3d 1356 (Fed. Cir. 2012)..................................................................................16

Massey Junior College, Inc. v. Fashion Inst. of Tech.,
    492 F.2d 1399 (C.C.P.A. 1974)..................................................................................17

In re Nat'l. Data Corp., 753 F.2d 1056 (Fed. Cir. 1985).........................16, 17, 21, 22, 25

Juice Generation, Inc. v. GS Enterprises LLC,
    14-1853 slip op. (Fed. Cir. Jul. 20, 2015).................................................................17

Jack Wolfskin Ausrustung Fur Draussen GMBH & Co. KGAA v. New
    Millennium Sports, S.L.U., 14-1789 slip op. (Fed. Cir. Aug. 19, 2015)........*Passim*

Tektronix, Inc. v. Daktronics, Inc., 534 F.2d 915 (C.C.A.P. 1976)..........................17, 21

Keebler Co. v. Murray Bakery Prods., 866 F.2d 1386 (Fed. Cir. 1989)...................17, 30

Packard Press, Inc. v. Hewlett-Packard Co., 227 F.3d 1352 (Fed. Cir. 2000).........17, 18

Sure-Fit Products Co. v. Saltzon Drapery Co.,
    254 F.2d 158 (C.C.P.A. 1958).............................................................................21-22

Kenner Parker Toys Inc. v. Rose Art Indus., Inc.,
    963 F.2d 350 (Fed. Cir. 1992).............................................................................22, 30

King Candy Co. v. Eunice's King's Kitchen, Inc.,
        496 F.2d 1400 (C.C.P.A. 1974)..............................................................24-25

Palm Bay Imports v. Veuve Clicquot Prods., 396 F.3d 1369 (Fed. Cir. 2005).............23

G.H. Mumm & Cie v. Desnoes & Geddes, Ltd.,
        917 F.2d 1292 (Fed. Cir. 1990)...............................................................25-26

Giant Food, Inc. v. Nation's Foodservice, Inc., 710 F.2d 1565 (Fed. Cir. 1983).........26

Han Beauty, Inc. v. Alberto-Culver Co., 236 F.3d 1333 (Fed. Cir. 2001)...............26, 30

Universal Camera Corp. v. NLRB, 340 U.S. 474 (1951)...................................28

Grupo Indus. Camesa v. U.S., 85 F.3d 1577 (Fed. Cir. 1996)...........................29

In re Dixie Restaurants, Inc., 105 F.3d 1405 (Fed. Cir. 1997)..........................30

B&B Hardware, Inc. v. Hargis Indus., Inc., 575 U.S. ___ (2015)............................30-31

In re Viterra Inc., 671 F.3d 1358 (Fed. Cir. 2012)....................................32


**Statutes**

15 U.S.C. § 1052(d)..........................................................................2

15 U.S.C. § 1063.........................................................................1, 16

15 U.S.C. § 1071(a)(1)......................................................................1

15 U.S.C. § 1071(a)(2) .....................................................................1

15 U.S.C. § 1071(a)(3)......................................................................1

15 U.S.C. § 1071(b).........................................................................1

15 U.S.C. § 1607............................................................................1

28 U.S.C. § 1295(a)(4)(B) ..................................................................1

**Trademark Manual of Board Procedure**

TMBP § 509.01(b)(2)...........................................................................................................26

## I.    STATEMENT OF RELATED CASES

Appellant is aware of no other appeals or cases relating to this Opposition or appeal.

## II.    JURISDICTIONAL STATEMENT

This is an appeal of Opposition 91202418, decided by a panel of the Trademark Trial and Appeal Board of the USPTO under 15 U.S.C. § 1067. A final decision in that Opposition issued on May 22, 2015, and Appellant timely appealed by a Notice of Appeal filed in this Court and the USPTO on July 21, 2015 under 15 U.S.C. § 1071(a)(2) and 37 C.F.R. § 2.145(d)(1). No party elected under 15 U.S.C. § 1071(a)(1) to proceed in district court under § 1071(b).

This Court has jurisdiction over this appeal under 15 U.S.C. § 1071(a)(1) and 28 U.S.C. § 1295(a)(4)(B). Upon receipt of the certified list from the USPTO under 15 U.S.C. § 1071(a)(3), this Court docketed this appeal on September 3, 2015 as appeal number 15-1976.

## III.    STATEMENT OF THE ISSUES

Whether confusion is likely between the Appellant's Application 85/342,228 on the word mark "BUILDING ASSETS FROM IDEAS" for legal services in intellectual property, including patent, trademark, copyright, and trade secret procurement, transfer, and enforcement and Appellee's Registrations 2,090,854; 3,129,158; and 3,215,068 all for variations of the slogan "TRANSFORMING IDEAS INTO BUSINESS ASSETS" for related services.

## IV.    <u>STATEMENT OF THE CASE</u>

Appellant and Applicant Ryan Alley, doing business as Ryan Alley Intellectual Property Law ("Applicant"), seeks reversal of the Trademark Trial and Appeal Board decision in Opposition 91/202,418 decided May 22, 2015, with instructions to register Applicant's Application 85/342,228.

On June 9, 2011, Applicant filed an application for registration on the Principal Register in the USPTO for the word mark "BUILDING ASSETS FROM IDEAS" ("Applicant's mark") as actually used by Applicant in legal services in intellectual property, including patent, trademark, copyright, and trade secret procurement, transfer, and enforcement. The USPTO assigned the application serial number 85/342,228.

Following a search uncovering no conflicting marks, the Examining Attorney allowed the application, and Applicant's mark was published for opposition on November 2, 2011. Appellee and Opposer Innovation Law Group, Ltd. ("Opposer") filed a Notice of Opposition on November 3, 2011 claiming a likelihood of confusion with, and dilution of, US Registrations 2,090,854; 3,129,158; and 3,215,068, on variations of "TRANSFORMING IDEAS INTO BUSINESS ASSETS" ("Opposer's marks") for legal services relating to intellectual property.

A panel of the Board sustained the Opposition in a final decision issued May 22, 2015 ("panel decision"), finding a likelihood of confusion between Applicant's mark and Opposer's marks under 15 U.S.C. § 1052(d) based on a subset of argued

*DuPont* factors. The panel's decision was designated as non-precedential, and is published at ttabvue.uspto.gov/ttabvue/v?pno=91202418&pty=OPP&eno=72. Applicant timely appealed the panel decision to this Court.

**Statement of Facts**

<u>Background and Parties</u>

Applicant and Opposer are both providers of legal services in intellectual property, with practices on opposite sides of the country. (A63006, A61002) Both Applicant and Opposer's principals are registered practitioners with the USPTO and members of the bar of this Court. (A63002-3, A61002)

While creating a website for his practice in the spring of 2011, Applicant formulated the slogan "building assets from ideas" as a unique way of capturing the "building block" theme of the new website and new practice logos using arranged squares. (A61003) After adding the slogan to the website and marketing materials, Applicant filed for a trademark registration on the word mark "building assets from ideas" in June 2011 for legal services in intellectual property ("the field at issue"). (A61004)

Prior to applying for registration, Applicant had never heard of Opposer or Opposer's Marks; however, shortly after applying Applicant was contacted by Opposer's principal with threats of a trademark opposition should the application be maintained. (A61004) Opposer is a small IP law practice in Washington state that uses

3

its marks with a slogan "transforming ideas into business assets" in connection with its practice. (A63003) Opposer advertises with its mark in accordance with regulations governing attorney advertising in several jurisdictions and online. (A63009-11) In November 2011, Opposer filed an opposition to Applicant's registration based on its US registrations backing these uses. (A01004-8)

### IP Services Landscape

Intellectual property law involves making ideas into assets. (A61033) The profession generally gives inventions, creations, and other products of the mind a legal anchoring and property form for transfer, development, exclusion, etc. like any other property, with certain limitations. Prior to and continuing through the Opposition, many different providers and parties in IP use phrases like "turning ideas into assets" to describe IP law and caption their services. (A61032-33) In the Opposition, Applicant identified nearly 70 different third parties using similar formulations and collected over 150 different instances of such public use to describe IP legal services, which it submitted as evidence. (A61032-33) A subset of third-party uses, whose full use is of record, is shown in the following abbreviated table for just IP providers with online materials, with the use found at the publicly available URL:

| Pin Cite(s) | Transforming Ideas into Assets[SM] *[slogan on page banner]*; "transform those ideas into assets" *[practice description, first sentence]* |
|---|---|
| URL(s) | http://www.hoffmanbaron.com; |

4

| | |
|---|---|
| | http://www.hoffmannbaron.com; http://www.hbiplaw.com |
| Pin Cite(s) | Transforming Ideas into Assets (SM) *[slogan on page banner]*; "transform those ideas into assets" *[practice description, first sentence]* |
| URL(s) | http://www.hoffmannbaron.com/about.asp |
| Pin Cite(s) | Transforming Ideas into Assets *[article title]* |
| URL(s) | http://www.hoffmanbaron.com/releases/NJBIZ%20Transforming.pdf |
| Pin Cite(s) | "transform those ideas into assets" *[pg. 10, middle column, first sentence of sponsor description]* |
| URL(s) | http://cewit.org/conferences/conference2009/docs/Program09Final.pdf |
| Pin Cite(s) | "Hoffmann & Barron transforms ideas into assets" *[pg. 24, bottom, final sentence of sponsor description]* |
| URL(s) | http://www.aertc.org/conference09/docs/2009AdvancedEnergyConference.pdf |
| Pin Cite(s) | "Hoffmann & Barron transforms ideas into assets" *[final sentence of sponsor description]* |
| URL(s) | http://www.aertc.org/conference09/exhandspon.html |
| Pin Cite(s) | "Hoffmann & Barron transforms ideas into assets" *[pg. 30, fifth sponsor, final sentence of sponsor description]* |
| URL(s) | http://www.aertc.org/conference2010/docs/ConfProgram_VIEW.pdf |
| Pin Cite(s) | "Hoffmann & Barron transforms ideas into assets" *[final sentence of sponsor description]* |
| URL(s) | http://www.aertc.org/conference2010/exhandspon.html |
| Pin Cite(s) | Transforming Ideas into Assets$^{SM}$ *[slogan at bottom end]* |

| | |
|---|---|
| URL(s) | http://www.hoffmanbaron.com/releases/IP%20Today%20July%202002%20Reprint.pdf |
| Pin Cite(s) | Transforming Ideas into Assets[SM] *[slogan at bottom end]* |
| URL(s) | http://www.hoffmanbaron.com/releases/IP%20Today%20Dec%202002%20Reprint.pdf |
| Pin Cite(s) | Transforming Ideas Into Assets *[slogan on page heading]* |
| URL(s) | http://about.me/jeff.schell |
| Pin Cite(s) | TRANSFORM YOUR IDEAS INTO MARKETABLE ASSETS *[picture caption]* |
| URL(s) | http://www.rockymountainpatent.com |
| Pin Cite(s) | "transform your idea into an asset" *[final paragraph, first sentence]* |
| URL(s) | http://www.meetup.com/PatentsForStartups/ |
| Pin Cite(s) | Transform Your Ideas Into Marketable Assets *[page subtitle]*; "transforms your ideas into marketable assets" *[company description first sentence]* |
| URL(s) | https://www.elance.com/s/potentpatent/about |
| Pin Cite(s) | Turning your ideas into assets *[slogan on page subheading]* |
| URL(s) | http://www.fletcheriplaw.com/ |
| Pin Cite(s) | Turning your ideas into assets *[tagline]* |
| URL(s) | https://plus.google.com/114137428428042912749/about |
| Pin Cite(s) | Transforming Ideas into Assets *[title of firm overview page]* |
| URL(s) | http://fountainheadlaw.com/Firm_Overview.htm |
| Pin Cite(s) | Transforming Ideas into Assets *[title of firm overview page]* |
| URL(s) | http://www.web.archive.org/web/20100924091427/http://www.fountainheadlaw.com/Firm_Overview.htm |

| | |
|---|---|
| Pin Cite(s) | Turning Ideas into Assets[SM] *[slogan under firm name]* |
| URL(s) | http://www.firstpointip.com |
| Pin Cite(s) | We turn ideas into assets *[first sentence]* |
| URL(s) | http://www.cleverindustries.com/ |
| Pin Cite(s) | Creating value from Ideas since 1978 *[slogan under About Us]* |
| URL(s) | http://www.cleverindustries.com/ |
| Pin Cite(s) | Turning ideas into assets *[slogan at end of listing]* |
| URL(s) | http://www.yellowpages.com/san-francisco-ca/mip/scott-redmond-30551292 |
| Pin Cite(s) | Transform ideas into assets. *[first page, right side slogan]* |
| URL(s) | http://www.clocktowerlaw.com/clients/showbrochure.pdf |
| Pin Cite(s) | Turning intangible ideas into business assets *[homepage heading]* |
| URL(s) | http://web.archive.org/web/20041009235230/http://www.clocktowerlaw.com/main.html |
| Pin Cite(s) | Turning Ideas Into Assets *[flyer title]*; www.idea-asset.com *[right column, bottom]* |
| URL(s) | http://www.idea-asset.com/Asset/Forbes.pdf |
| Pin Cite(s) | "turn their creativity and ideas into significant proprietary assets" *[final sentence]*; The idea Asset Group *[caption under firm name]* |
| URL(s) | http://www.idea-asset.com/ |
| Pin Cite(s) | "turn their creativity and ideas into significant proprietary assets" *[final sentence]*; The idea Asset Group *[caption under firm name]* |
| URL(s) | http://web.archive.org/web/20080204145430/http://www.idea-asset.com/ |

| Pin Cite(s) | Transforming Ideas Into Assets *[center homepage slogan]* |
|---|---|
| URL(s) | http://48754447.wix.com/gruberip-from-scratch; http://webcache.googleusercontent.com/search?q=cache:Aaa TRJG2booJ:48754447.wix.com/gruberip-from-scratch+&cd=5&hl=en&ct=clnk&gl=us |
| Pin Cite(s) | "turning ideas into assets" *[left, second paragraph, second sentence]*; |
| URL(s) | http://www.neugeborenlaw.com/index.php?id=23 |
| Pin Cite(s) | "Transofrming ideas into assets" *[first sentence under Experience]* |
| URL(s) | http://www.linkedin.com/pub/steve-gruber/33/763/265 |
| Pin Cite(s) | Transforming ideas into valuable IP assets *[second page, first sentence]* |
| URL(s) | http://www.marburylaw.com/practice/strategic-intellectual-property-counseling.html |
| Pin Cite(s) | Transforming ideas into valuable IP assets *[first sentence]* |
| URL(s) | http://web.archive.org/web/20100620203136/http://www.marburylaw.com/content.asp?pl=542&contentid=543 |
| Pin Cite(s) | Turning concepts into assets *[word mark]* |
| URL(s) | http://tess2.uspto.gov/bin/showfield?f=doc&state=4009:usbq.2.1 |
| Pin Cite(s) | TURNING CONCEPTS INTO ASSETS *[page subheading]* |
| URL(s) | http://www.bostonlegalconsultantgroup.com/services |
| Pin Cite(s) | Turning Concepts Into Assets$^{SM}$ *[slogan under firm name]* |
| URL(s) | https://www.facebook.com/pages/Boston-Legal-Consultant-Group-LLC/187041421312166 |
| Pin Cite(s) | "Concepts2Assets" *[second page twitter handle]*; "Turning concepts into assets" *[second page, first Objective sentence]* |

| | |
|---|---|
| URL(s) | http://www.twitter.com/Concepts2Assets |
| Pin Cite(s) | Turning Concepts Into Assets<sup>SM</sup> *[slogan under firm name]* |
| URL(s) | https://sites.google.com/site/bostonlegalconsultantgroup/ |
| Pin Cite(s) | Turning concepts into assets *[objective section under name]* |
| URL(s) | http://www.pinterest.com/concepts2assets/ |
| Pin Cite(s) | "turn great ideas into valuable assets" *[right middle, final sentence]* |
| URL(s) | http://www.tkhr.com |
| Pin Cite(s) | "turning ideas into business assets" *[middle section "Establishing your IP. . .", second paragraph, second sentence]* |
| URL(s) | http://correllpatents.com/index.html |
| Pin Cite(s) | "turning ideas into assets" *[final sentence]* |
| URL(s) | http://www.kelly-krause.com/profile.html |
| Pin Cite(s) | "turn your ideas into assets" *[first paragraph, third sentence]* |
| URL(s) | http://www.crmiles.com/contact-us |
| Pin Cite(s) | "turn our client's ideas into assets" *[bottom section "Trademark," first paragraph, final sentence]* |
| URL(s) | http://www.bgiplaw.com/practice.htm |
| Pin Cite(s) | CREATING VALUE FROM IDEAS *[word mark]* |
| URL(s) | http://tess2.uspto.gov/bin/showfield?f=doc&state=4006:gjjm76.2.1 |
| Pin Cite(s) | Creating Value From Ideas®. *[central page slogan]* |
| URL(s) | http://www.wsrgm.com |
| Pin Cite(s) | Creating Value from Ideas *[central flyer slogan above firm name]* |

9

| | |
|---|---|
| URL(s) | http://tsdr.uspto.gov/documentviewer?caseId=sn78160349&docId=SPE20030819131448#docIndex=13&page=1 |
| Pin Cite(s) | From Ideas to Assets *[book cover, item title]* |
| URL(s) | http://www.amazon.com/From-Ideas-Assets-Investing-Intellectual/dp/0471400688 |
| Pin Cite(s) | From Ideas to Assets *[book cover, item title]* |
| URL(s) | http://www.wiley.com/WileyCDA/WileyTitle/productCd-0471400688.html |
| Pin Cite(s) | "turn ideas into assets" *[middle page, first sentence]* |
| URL(s) | http://brodyberman.com/ |
| Pin Cite(s) | "From Ideas to Assets" *[near bottom "New Book" section, book cover and title]* |
| URL(s) | http://web.archive.org/web/20020527172451/http://brodyberman.com/ |
| Pin Cite(s) | "From ideas to ASSETS" *[right ad column, middle]* |
| URL(s) | http://ipcloseup.wordpress.com/ |
| Pin Cite(s) | Bruce Berman, IP Hall of fame Academy member *[second page, middle]*; "From Ideas to Assets" *[fourth page, second paragraph, final sentence]* |
| URL(s) | http://www.iphalloffame.com/Academy.aspx |
| Pin Cite(s) | From Ideas to Assets, *[second page, entry 11]*; 11th bestseller on Amazon.com in Patent category *[first page, left department listings]* |
| URL(s) | http://www.amazon.com/gp/bestsellers/books/10960/ref'pd_zg_hrsr_b_1_4_last |
| Pin Cite(s) | "Turn Abstract Ideas into Tangible Assets" *[tagline under name]*; "turn their ideas into tangible assets" *[summary, first paragraph, third sentence]* |

10

| | |
|---|---|
| URL(s) | http://www.linkedin.co/in/gregosterloth |
| Pin Cite(s) | Ideas to Assets *[image caption/slogan]* |
| URL(s) | http://www.adamsiplaw.com/ |
| Pin Cite(s) | "guide you from idea to asset" *[second page, second paragraph, final sentence]* |
| URL(s) | http://sbiplaw.com/practice-areas/ |
| Pin Cite(s) | WHERE INNOVATION BECOMES ASSETS *[word mark]* |
| URL(s) | http://tess2.uspto.gov/bin/showfield?f=doc&state=4007:erue 4r.3.1 |
| Pin Cite(s) | Where Innovation Becomes Assets *[right side slogan after firm name]* |
| URL(s) | http://www.batemanip.com/ |
| Pin Cite(s) | WHERE INNOVATION BECOMES ASSETS™ *[top left under firm name]* |
| URL(s) | http://tsdr.uspto.gov/documentviewer?caseId=sn78410262&docId=SPE20050526120231#docIndex=7&page=1 |
| Pin Cite(s) | FROM IDEAS TO PROFITS *[word mark]* |
| URL(s) | http://tess2.uspto.gov/bin/showfield?f=doc&state=4807:6adh d3.3.2 |
| Pin Cite(s) | FROM IDEAS TO PROFITS® *[top left, slogan under firm name]* |
| URL(s) | http://www.lawofficeofpaulwfulbright.com/admin.lawofficeof paulwfulbright.lawoffice.com/index.html |
| Pin Cite(s) | FROM IDEAS TO PROFITS® *[top left, slogan under firm name]* |
| URL(s) | https://web.archive.org/web/20090105205040/http://www.la wofficeofpaulwfulbright.com/admin.lawofficeofpaulwfulbright. lawoffice.com/index.html |

Dozens of other uses, from books, presentations, flyers, online media, programs, and other marketing with the ideas/assets formulation to describe IP procurement were submitted from third parties in the Opposition. (A61011-32) Opposer did not contest the substance of this third party evidence. Despite the fact that Opposer kept meticulous records of all contact owing to its mark and advertising, there was no evidence that any of these third party uses ever caused confusion. (A63009-10, A61006)) Opposer introduced evidence of only a single quasi-successful policing of the above uses; the use was still uncovered by Applicant through the Internet. (A63007-8)

The field at issue – legal services in intellectual property – is highly regulated with regard to entry into the profession, marketing one's legal services, and engaging clients. (A61006-11) Nearly all jurisdictions require that legal services be advertised with a name and contact information for the attorney, not just a slogan or trade name. (A61007) Moreover, because of the expense and individualized nature of the professional service, consumers are always aware of the ultimate provider and source of their services. (A61010-11) Indeed, personal interaction with the providing attorney is nearly always the initial step before consummating legal services in IP.

The Opposition and Panel Decision

Applicant introduced significant evidence of third-party use, including all those previously described, to show that Opposer's mark was weak and entitled to narrow

scope under § 2(d) of the Lanham Act. (A61011-33) Applicant further introduced

dictionary evidence and testimony as to the descriptive elements of Opposer's marks,

to highlight how the marks should be emphasized when compared. (A61032) The

multiple third-party uses were significantly closer in appearance to Opposer's marks

than Applicant's mark and thus also showed lack of confusion during concurrent use.

(A61033-34) Applicant further argued, based on evidence on pricing, regulations, and

norms in the IP industry, that the services at issue are consumed with great care, due

to their expense and professional, commercial nature. (A61006-11) Applicant lastly

argued that the trade channels between Applicant and Opposer were wholly different

owing to the professional-based nature of legal services, that Opposer used its marks

on a single, small source of services, and that any actual confusion that could

hypothetically occur based on the marks would be *de minimus*. (A59039-42)

Opposer alleged that Applicant's mark was a mere inversion of its own, and

that the marks said the same thing for the same services. (A01004-8) Opposer

submitted testimony of a brand consultant testifying to the descriptive impression

imparted by the marks as well as their similarities. (A38022-27) Opposer also

submitted evidence that its marks were known by others in the industry and

advertised throughout several states over several years, showing mark strength.

(A38011-21, A63009-11) Opposer also alleged without specificity or evidence that

Applicant had fraudulently sought registration, testifying that Applicant should have

known of Opposer's marks and not attempted to register its own. (A01007) Lastly,

Opposer submitted pages of evidentiary objections. (A00004)

The panel sustained the Opposition, finding a likelihood of confusion based

primarily on the similarity of the marks and overlapping field at issue. (A00007) In

comparing the marks, the panel focused solely on the shared words "asset" and "idea"

and their meaning within the marks, finding similarity because both marks used these

terms. (A00020-22) The panel found that the field of services are purchased under a

high degree of care. (A0009-13) While the panel agreed with Applicant that the

numerous third-party uses showed weakness in Opposer's marks, it downplayed this

finding as "theoretical." (A00013-20) The panel declined to weigh the lack of

confusion during concurrent use and nowhere acknowledged Applicant's arguments

and evidence about *de minimus* extent of potential confusion under the twelfth *DuPont*

factor, single-service usage under the ninth *DuPont* factor, and differing trade channels

under the third *DuPont* factor, despite weighing the last factor for Opponent.

(A00008, A00022-24) The panel overruled all evidentiary objections in rather

summary fashion. (A00004)

## V.    SUMMARY OF ARGUMENT

The TTAB panel decision should be reversed because it is not supported by

substantial evidence and is contrary to law. The most prominent error in the decision

below is its dissection of Applicant's and Opposer's marks under the first *DuPont*

factor. The panel based its conclusions of similarity entirely on two shared words in the marks. The panel failed to consider the suggestive, commonplace nature of these words in comparing mark elements and ignored other, dominant mark terms completely.

Further, the panel failed to consider all evidence of record as to concurrent use without evidence of confusion under the eighth *DuPont* factor. The panel failed to resolve its contradictory statements about the extent of Applicant's promotion of its marks and overlooked compelling evidence of lack of search engine confusion as well as lack of confusion between any of the myriad third party uses that were actually closer in form to Opposer's marks than Applicant's marks.

Lastly, the panel did not give due process or adequate consideration to fully-developed arguments, supported by evidence of record, on the third, ninth, and twelfth *DuPont* factors. Indeed, the panel was completely silent about Applicant's arguments and evidence on these factors. Board decisions may have preclusive effect on other proceedings, and this Court must ensure the Board is fully considering arguments and evidence on relevant *DuPont* factors.

## VI.    <u>ARGUMENT</u>

A.    STANDARD OF REVIEW

Whether a mark is likely to confuse consumers as to the source of the goods or services under § 2(d) of the Lanham Act depends on the relevant factors set out in <u>In</u>

re E.I. du Pont Nemours & Co., 476 F.2d 1357 (C.C.P.A. 1973) (hereinafter "*DuPont* factors"). In an Opposition to registration under 15 U.S.C. § 1063, the Opposer bears the burden of establishing that confusion is likely based on the *DuPont* factors. Cunningham v. Laser Golf Corp., 222 F.3d 943, 951 (Fed. Cir. 2000).

On appeal, the Board's findings on individual *DuPont* factors are reviewed for substantial evidence. Hewlett-Packard Co. v. Packard Press, Inc., 281 F.3d 1261, 1265 (Fed. Cir. 2002). That is, the Board's factual determinations as to a *DuPont* factor will be upheld if they are reasonable, account for the record as a whole, and are based on something more than a scintilla of evidence. *See* On-Line Careline, Inc. v. Am. Online, Inc., 229 F.3d 1080, 1085 (Fed. Cir. 2000). This Court, however, reweighs the individual *DuPont* factors *de novo* in the ultimate, legal determination of likelihood of confusion, giving no deference to the Board. *See* Coach Services, Inc. v. Triumph Learning L.L.C., 668 F.3d 1356, 1362, 1371 (Fed. Cir. 2012).

B.    THE BOARD FOUND SIMILARITY BETWEEN THE MARKS BASED ONLY ON DISSECTED, COMMONPLACE ELEMENTS

The first *DuPont* factor inquires as to the "similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression." DuPont, 476 F.2d at 1361. The caselaw is diverse and legion that a comparison under this factor absolutely cannot dissect out descriptive or commonplace mark elements for exclusive consideration. Massey Junior College, Inc. v. Fashion Inst. of Tech., 492 F.2d 1399, 1402 (C.C.P.A. 1974); In re Nat'l. Data

Corp., 753 F.2d 1056, 1058 (Fed. Cir. 1985); Juice Generation, Inc. v. GS Enterprises

LLC, 14-1853 slip op. at 11 (Fed. Cir. Jul. 20, 2015); Jack Wolfskin Ausrustung Fur

Draussen GMBH & Co. KGAA v. New Millennium Sports, S.L.U., 14-1789 slip op.

at 11-12 (Fed. Cir. Aug. 19, 2015). Quite the opposite, marks must be compared in

their entireties, with emphasis on unique and non-descriptive elements under the first

*DuPont* factor. *See* Tektronix, Inc. v. Daktronics, Inc., 534 F.2d 915, 916-17 (C.C.P.A.

1976); Nat'l. Data Corp., 753 F.2d at 1058, n. 2; Keebler Co. v. Murray Bakery Prods.,

866 F.2d 1386, 1390 (Fed. Cir. 1989); Packard Press, Inc. v. Hewlett-Packard Co., 227

F.3d 1352, 1357-58 (Fed. Cir. 2000).

The panel below did not follow this caselaw. The analysis of actual mark

elements was severely truncated, comparing only the two words "ideas" and "assets"

and a descriptive gist using the same. Here is that analysis in its entirety:

> Applicant's mark is BUILDING ASSETS FROM IDEAS and the mark
> in Opposer's pleaded registration is TRANSFORMING IDEAS INTO
> BUSINESS ASSETS. The marks have similar meanings and engender
> similar commercial impressions. We find that both marks mean and
> engender the commercial impression that the law firms help their clients
> develop ideas into assets. *See also* the Laurel Black testimony discussed *infra*
> [sic - *supra*].
>
> With respect to the appearance and sound of the marks, we note that the
> marks are not identical. Nevertheless, they are similar because they share
> the words "Assets" and "Ideas" in taglines that mean the same thing.
> Trademark law does not require exact similitude to conclude that two
> marks are similar. *Hercules Inc. v. Nat'l Starch and Chem. Corp.*, 223 USPQ
> 1244, 1246 (TTAB 1984). Thus, the differences between the marks at issue
> do not obviate their similarity.

17

(A00021-22) As seen, the panel repeated the marks and then dissected out only "assets" and "ideas" for actual comparison. The panel further compared a descriptive connotation with these two words - "both marks mean . . . develop ideas into assets." This was the extent of the panel's reasoning, which then abruptly concluded with a finding of similarity.

While stating in passing that marks must be compared in their entireties, the panel never did so. There is no discussion of the whole marks' different leading terms "building" and "transforming," different ordering, different prepositions, wholly excluded "business" element between the marks, or how these cause different appearances, sounds, and meanings between the marks. This is despite record evidence and argument that the divergence in first words, length, and mark ordering result in very different appearances, sounds, meanings, and commercial impressions. (A59024-27, A61034-36) Indeed, the panel's short analysis was essentially completely dissection-based, certainly more so than the comparatively thorough analysis reversed in <u>Jack Wolfskin</u>. *Compare* A760016-20 (TTAB panel opinion in <u>Jack Wolfskin</u> case with over three pages comparing several aspects of mark elements) *with* <u>Jack Wolfskin</u>, 2014-1789 slip op. at 12-13 (reversing the same for dissection); *see also* <u>Packard Press</u>, 227 F.3d at 1357 (Board may not simply state, but must give actual explanation of how, it considered marks in their entireties). In sum, the panel's terse conclusion of similarity based exclusively on two words excerpted out of the marks runs afoul of the anti-dissection rule and should be reversed.

18

But what is more problematic here is that the dissected terms "asset" and "idea" are very commonly used to market IP legal services in the same manner as the marks. Moreover, "development of the idea into an asset" describes the IP legal services at issue. All of this was found by the panel itself. (A00013-19) These findings were supported by overwhelming evidence of third-party use of idea/asset formulations in IP law. (A00013-19) They were also supported by dictionary showings of descriptiveness (A43198-216, A40022-32) and admissions by Opposer (A00018-19). Yet, as seen above, the panel never discussed or accounted for this evidence in comparing the marks or selecting out only "ideas" and "assets" for emphasis. Without revisiting every third party use in detail (there are well over 100 uses from nearly 70 distinct providers of record, summarized in a table at A61011-33), a few representative uses are sufficient to demonstrate how the panel erred by overlooking the uses and mark descriptiveness shown by the same when comparing the marks.

For example, Hoffmann & Baron, a large IP law firm with thousands of patents issued in its name, has for the nearly a decade used "Transforming Ideas into Assets" as its service mark throughout several different types of advertising. (A43217-20, A43229, A43255, A43262, A43292, A43295, A43306, A43308-18, A61033-34) Many other IP attorneys and firms have for years used stand-alone slogans like "turning ideas into assets" (A43321-22, A43326-33, A43336-37, A43353-57), "turning concepts into assets," (A43363-69) and "creating value from ideas" (A43376-78) as registered trademarks and slogans in print and online media. (A61033-34). An

Amazon best-selling book by IP Hall of Famer Bruce Berman is titled "From Ideas to Assets." (A43379-94) Several different patent offices use slogans like "Turning Ideas into Assets." (A43423, A43428, A43442, A43445) There are additionally dozens of different descriptive uses from providers of IP legal services about how they develop ideas into assets, including WIPO's long-standing teaching that "protection of a company's [IP] is a crucial step in . . . turning ideas into business assets." (A43412-19) The Board satisfied itself with identifying a few dozen of these uses before concluding that Opposer's marks overall were highly suggestive (A00013-19), and actual uses in the record are several fold those identified in the opinion below (A61011-33).

Opposer itself submitted testimony that its marks are descriptive. Opposer's brand consultant directly testified that Opposer's marks "tell[] the prospective client the strategic goals . . . with respect to providing legal services," that such taglines "provide . . . the essence of the service or product provided" and Opposer's marks "tell[] a prospect what the Opposer's suite of services does for them." (A38023-24) The Board agreed with these statements. (A00018-19) This is nothing less than an admission that Opposer's marks describe legal services in intellectual property, the field at issue. As seen, there is an overwhelming amount of evidence – accepted by the Board in its opinion - showing that the terms "asset" and "idea" were very commonly used by IP legal services providers for years and that the gist of "developing ideas into assets" was highly suggestive of the field of service at issue.

The panel erred in divorcing these findings of descriptiveness from its comparison of the marks. Commonplace and descriptive elements are not supposed to receive emphasis under the first *DuPont* factor, let alone form the exclusive basis for similarity as they did below. Tektronix, 534 F.2d at 916-917 ("a common, highly suggestive portion is usually insufficient to support a finding of likelihood of confusion"); Nat'l. Data Corp., 753 F.2d at 1060 (consumers "rely more on the non-descriptive portion of each mark" to distinguish the same). Thus, everything in the marks *except* "asset" and "idea" should have been given emphasis, not ignored. The panel offered no rationale or explanation as to why it took the exact opposite course - why the non-unique elements "asset" and "idea" and the admittedly-descriptive gist of "developing an idea into an asset" were exclusively relied upon in determining likelihood of confusion. Indeed, the panel gave no indication that it even recognized its own determinations that "idea," "asset," and "developing ideas into assets" were commonplace and highly suggestive when comparing the marks. (A00020-22) This is reversible error. *See* Jack Wolfskin, 14-1789 slip op. at 14 (if the Board places heavy emphasis on an oft-used mark element under the first *DuPont* factor, it must provide a rational reason for doing so).

The point, however, is bigger than mere procedure. Comparing marks in their entireties, with emphasis on non-descriptive and unique portions, ensures that a mark will not preempt an entire field or wrongly be found likely to confuse on aspects that consumers would never consider. *See* Sure-Fit Products Co. v. Saltzon Drapery Co.,

254 F.2d 158, 160 (C.C.P.A. 1958) (a mark cannot "preempt the field" of a descriptive term); Nat'l. Data Corp., 753 F.2d at 1060 (consumers "rely more on the non-descriptive portion" of the marks); *see also* Kenner Parker Toys Inc. v. Rose Art Indus., Inc., 963 F.2d 350, 352 (Fed. Cir. 1992) (Section 2(d) "does not focus on similarity of competing marks in the abstract. Rather the test evaluates objective evidence that the competing marks, when used in the marketplace, are likely to confuse the purchasing public about the source of the products").

The panel's faulty comparison runs headlong into these pitfalls of preemption and overbreadth; the dissected analysis below would find likelihood of confusion between *any* marks using "asset" and "idea" to express the process of developing ideas into assets for legal IP services, because these were the only mark elements considered below. Such an analysis would find a likelihood of confusion among coexisting registrations of the same "developing ideas into assets" gist (such as the US Registrations on "Creating Value from Ideas"; "Where Innovation becomes Assets"; or "From Ideas to Profits" all for legal services, at A43376, A43339, and A39402) and the many idea/asset slogans currently in use without any confusion. This cannot be correct.

Had the panel properly compared the marks in their entireties with emphasis on non-descriptive aspects, it would have avoided the above problems while equally finding that the first *DuPont* factor weighed for no likelihood of confusion between

the relatively different marks at issue here. Nonexclusive reliance on the common

"assets" and "ideas" words, combined with consideration of the whole marks'

differing "building" and "transforming" leading terms, the omission of "business"

from Applicant's mark, the different ordering and preposition between the marks

would have shown that the marks are more dissimilar than similar. That correct

analysis, as extensively argued and supported by evidence below (A59024-27), follows.

"Building" and "transforming" merit emphasis under the first *DuPont* factor

owing to their leading position and because the remainder of the mark terms are

much more common (at least in the case of Applicant's "building," for which there is

no third-party use of record). *See* Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin

Maison Fondee en 1772, 396 F.3d 1369, 1372 (Fed. Cir. 2005) (leading position may

merit emphasis). "Building" does not sound or appear like "transforming." The terms

have different starting hard consonants, different numbers of syllables, different

internal flow, mutually exclusive lengths and letters except for the generic "ing"

ending. (A61034) "Building" and "transforming" are not synonyms. (A61034-35,

A43198-216) "Building" does not impart a commercial impression of a radical change

in nature, or consuming one thing in favor of another as "transforming" does.

(A61035 -36) Instead, "building" gives an impression of directly, manually

constructing or assembling a larger whole from individual pieces whose nature does

not change and can be seen as built into the larger whole. (A61035-36) Thus, when

considered in the context of IP legal services, "building" is fanciful in that ideas

cannot be physically put together. "Transforming" wholly lacks this fanciful connotation in the field at issue and has a distinct, more descriptive meaning.

Taking "transforming" and "building" in the marks in their entireties, Opposer's mark "Transforming Ideas into Business Assets" uses the more common idea-into-asset ordering, causing "transforming" to work on "ideas," whereas Applicant's mark uses a distinct order and preposition, causing "assets" to be the worked-upon noun in "Building Assets from Ideas." Applicant's mark omits the "business" term, resulting in a much shorter overall spoken phrase and allowing "building" to directly work on "assets." These differences cause the marks in their entireties to look different when seen and sound different when spoken. As to protectable connotation, the leading "transforming" and "building" invoke different mental imagery and recollection with the remainder of the marks – a consumptive conversion versus a physical assembling. Taken with the reversed word order, entire "business" omission, and preposition changes, consumers are more likely to recall a manual manipulation of "assets" from Applicant's mark, as opposed to a conversion process undertaken on "ideas" from Opposer's Marks and the third-party uses.

These are not nit-pick differences. As demonstrated by the several third-party uses, dictionaries, and caselaw, *supra*, these are the only non-descriptive aspects the consuming public could use to differentiate among players in a crowded field and are variations Opposer should fairly expect a competitor to adopt based on its use of descriptive terms. *See* King Candy Co. v. Eunice's King's Kitchen, Inc., 496 F.2d

1400, 1401 (C.C.P.A. 1974) (when exposed to suggestive and commonplace terms, "the public easily distinguishes slight differences in the marks"); <u>Nat'l. Data Corp.</u>, 753 F.2d at 1060.

In sum, the panel below did not comply with the required procedure in comparing marks for similarities and dissimilarities in their entireties under the first *DuPont* factor. Its analysis improperly dissected out two words from the marks for comparison, and, in doing so, wrongly focused on the most commonplace and descriptive aspects of the marks. Had the panel followed the approach set out in the caselaw, which requires as a matter of law that marks be compared in their entireties with any emphasis going to arbitrary or fanciful aspects, the first *DuPont* factor would not have been weighed for a finding of likelihood of confusion. The Board's finding to the contrary, using the wrong legal procedure for comparing marks, is not supported by substantial evidence. *See* <u>Jack Wolfskin</u>, 14-1789 slip op. at 14.

## C.    THE BOARD UNREASONABLY CONCLUDED THERE WAS NO OPPORTUNITY FOR CONFUSION TO OCCUR

The eighth *DuPont* factor inquires as to the "length of time during and conditions under which there has been concurrent use without evidence of actual confusion" <u>DuPont</u>, 476 F.2d at 1361. A sufficient amount of time must pass with concurrent use in overlapping geographies before an absence of confusion in the record will cause this factor to weigh against a likelihood of confusion. *See* <u>G.H. Mumm & Cie v. Desnoes & Geddes, Ltd.</u>, 917 F.2d 1292, 1295 (Fed. Cir. 1990) (over

ten years of concurrent marketing without evidence of confusion showed confusion

was unlikely); *cf.* Giant Food, Inc. v. Nation's Foodservice, Inc., 710 F.2d 1565, 1571

(Fed. Cir. 1983) (geographic separation undercutting value of eighth *DuPont* factor);

Han Beauty, Inc. v. Alberto-Culver Co., 236 F.3d 1333, 1338 (Fed. Cir. 2001) (lack of

evidence of duration for concurrent sales undercutting value of eighth *DuPont* factor).

Although there was no evidence of actual confusion over several years of

concurrent use, the panel seized on geographic dissimilarity to weigh the eighth

*DuPont* factor neutral:

> Because we ***do not have any evidence regarding the extent of Applicant's advertising or the geographic scope of his practice***, we cannot make a finding as to whether after two and one-half years[1] of simultaneous use, there has been an [sic] reasonable opportunity of confusion to have occurred.

(A00023-24) (emphasis added)

Applicant appreciates the deferential nature of the standard, but this finding is

not supported by substantial evidence. The finding does not account for the record as

a whole, contradicts the panel's own findings, and ultimately does not have a scintilla

---

[1] Although not directly relying on temporal insufficiency to dismiss this factor, the panel's formulation of 2.5 years of concurrent use is unreasonable. The panel accounted for time only through the end of Opposer's initial testimony period. Opposer, however, could have reopened testimony if it discovered new evidence of actual confusion at any time before the panel decision of May 22, 2015. *See* TMBP § 509.01(b)(2). This is over 4 years of concurrent use with opportunity for actual confusion to be submitted into the record. At any rate, both 2.5 and 4 years are adequate windows for actual confusion to have occurred given the amount of advertising of record, if it were ever likely.

of evidentiary support. *Cf.* <u>On-Line Careline</u>, 229 F.3d at 1085. Here is the panel's

immediate prior finding:

> Although Applicant is licensed to practice law in California and Virginia,
> he has ***advertised on the Internet which is national in scope***. . . .
> Opposer [is] based in Washington state, and serve[s] clients primarily in
> California, Illinois, Colorado, Pennsylvania, Michigan, Florida, Kansas,
> Arizona, and Washington. ***In addition to Internet advertising***,
> Opposer's mark has been advertised on a firm truck in California,
> Washington, Oregon, Idaho, Utah, Wyoming and Colorado.

(A00023-24) (internal quotes and citations omitted) (emphasis added). As seen, the

panel in fact found that both Applicant and Opposer advertised their marks nationally

on the Internet. This directly contradicts the panel's later statement that they lacked

any evidence regarding the geographic scope of Applicant's practice.

Moreover, in making the statement regarding the overlapping national

character of the marks' promotion, the panel relied on testimony that a website very

prominently bearing Applicant's mark (http://alleylegal.com) had received over

30,000 unique visitors with over 80,000 views across the entire US in the same time

period. (A61004-6, A43047). This evidence further included search engine data that

Applicant and its mark were indexed in the Google search engine for over a year, yet

no search of Opposer or its marks yielded Applicant's website during that time, as

reported by Google. (A61004-6, A43048-68). That is, advertising prominently

displaying Applicant's mark were quite widely and nationally consumed through visits

and search engines for over three years alongside Opposer's marks, with neither

consumer nor search engine confusion.

As seen, the panel was extremely well-supported in finding that all marks were concurrently and nationally advertised, available, and widely consumed via the Internet. But the panel directly contradicts this record and its findings when it abruptly concluded that it did "not have any evidence" as to the geographic scope or extent of Applicant's advertising. (A00023-24) Fairly considering the whole record, the panel here had evidence of a large amount of concurrent and geographically-overlapping use between the marks in the same field without confusion, and no detracting evidence, to weigh against a likelihood of confusion under the eighth *DuPont* factor. *See* <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951) (substantial evidence test considers supporting and detracting evidence in the whole record to determine if agency's conclusion has more than a scintilla of aggregate support).

Lastly, the panel ignored alternative evidence under the eighth *DuPont* factor. Applicant argued – and pointed to a lack of evidence - that Opposer (or Applicant) had ever been confused with any of the third-party IP legal service providers, despite the voluminous record of their large number, many years of use, and marks closer in appearance to Opposer's marks than Applicant's mark. (A59041) Opposer testified that it has widespread advertising of its marks and took careful note of all client interactions. (A63009-10) Thus, if confusion between any of the several third party marks and Opposer's marks had occurred, it would have made its way into the record

28

here. Surely at the very least, if confusion were at all likely, Opposer would have been contacted by a party seeking Hoffmann & Baron, owing to that IP firm's size, national practice, and longstanding use of the nearly identical service mark "Transforming Ideas into Assets" in the same IP legal services. Opposer would have recorded and trumpeted such evidence as showing confusable consumers and policing here.

While the eighth *DuPont* factor has traditionally been considered in terms of concurrent use between the marks of the two parties at bar, there is no reason why – as here – lack of confusion between an Opposer's marks and third-party marks that are all in widespread and longstanding use in the same field with ample recordation opportunity should not equally indicate a lack of likelihood of confusion[2]. The panel below should have considered the argued evidence of the several closer third-party marks that had generated no known confusion in evidence under the eighth *DuPont* factor. *See* Grupo Indus. Camesa v. U.S., 85 F.3d 1577, 1580 (Fed. Cir. 1996) ("If the one who determines the facts which underlie the order has not considered evidence or argument, it is manifest that a hearing has not been given"). Had the panel properly considered the evidence of extent of Applicant's marketing of its marks discussed above, as well as the lack of Internet confusion and confusion between the third party

---

[2] In the alternative, the panel and this Court may consider evidence of lack of confusion between an Opposer's marks and several closer, longstanding third party marks under the catchall 13th *DuPont* factor.

29

marks, the only reasonable conclusion would have been, at a minimum, to modestly weigh the eighth *DuPont* factor against a likelihood of confusion.

D.    THE BOARD FAILED TO CONSIDER EVIDENCE AND ARGUMENT ON RELEVANT DUPONT FACTORS

The Board is not required to analyze in detail each and every *DuPont* factor argued by the parties – it may base its decision on individual factors it finds dispositive to the issue of likelihood of confusion. Kenner Parker Toys, 963 F.2d at 352 ("different factors may play dominant roles in determining likelihood of confusion"); *see* In re Dixie Restaurants, Inc., 105 F.3d 1405, 1406-07 (Fed. Cir. 1997) (Board's acknowledgement that parties argued each *DuPont* factor was sufficient even though the Board gave full analysis only to a subset of the factors it deemed important). The Board cannot, however, outright ignore evidence argued by the parties, certainly not with respect to factors it does weigh. DuPont, 476 F.2d at 1362 ("it is the duty of the . . . board and this court to find, upon consideration of *all* the evidence, whether or not confusion appears likely"); Han Beauty 236 F.3d at 1336 (The Board "must consider each factor for which it has evidence").

The requirement for consideration of evidence is doubly important following the Supreme Court's decision in B&B Hardware, Inc. v. Hargis Indus., Inc., 575 U.S. ___ (2015), which established that a TTAB decision in an opposition will often establish likelihood of confusion for infringement purposes through issue preclusion.

Following B&B Hardware, a party's evidence and argument before the TTAB in an opposition may be its only chance to establish and argue any record with respect to likelihood of confusion. As such, it is now more vital than ever that the Board give thorough consideration to evidence and arguments actually made on applicable *DuPont* factors in an opposition.

Here, the panel gave every indication that it ignored Applicant's arguments and evidence about *de minimus* extent of potential confusion under the twelfth *DuPont* factor and single-service usage under the ninth *DuPont* factor. As to the twelfth factor, Applicant argued that any hypothetical confusion that might initially occur between Applicant's and Opposer's marks would immediately be stemmed by differences in Applicant's and Opposer's names and personal characteristics. (A59039-40) Applicant cited evidence of record of the highly personal nature of the field at issue, professional legal services in IP (A43144-A43197), as well as several regulations requiring attorney identification in legal advertising nationwide (A43069-A43143), to support the argument that confusion could not extend beyond *de minimus* levels in the field at issue here, and certainly not through actual consumption of services from a mistaken provider. (A59039). As to the ninth factor, Applicant argued that "Opposer Marks are used on a single niche service – those offered from a single office" and pointed to Opposer's admission of the same in evidence. (A590039, A63006).

With respect to the third *DuPont* factor – differing trade channels – the panel did discuss this factor. The panel summarily weighed the factor as favoring a

likelihood of confusion because the field of services at issue overlapped, which makes the trade channels presumptively the same. (A00008, citing In re Viterra Inc., 671 F.3d 1358 (Fed. Cir. 2012) (condoning a presumption of shared trade channels where there was no argument or evidence of record on the factor).) But there was argument and evidence of record that trade channels between distinct IP attorneys would also be distinct, because of the personal-based nature of referrals and individual skills and experience that differed between service sources. (A59041-42) Applicant pointed to evidence and admissions of record that consumers choose IP attorneys based primarily on referrals and personal characteristics to support this argument. (A59041-42, A59034-36, A59039-40)

As seen, Applicant had significant arguments and evidence on the third, ninth, and twelfth factors. But the panel decision never mentioned either of the twelfth or ninth *DuPont* factors or gave any indication that Applicant made argument and submitted evidence on these factors. While weighing the third *DuPont* factor, the panel never acknowledged that Applicant made contrary argument based on evidence of record. Indeed, the panel's caselaw cited in connection with the third *DuPont* factor applies only in instances where no evidence of record on that factor. Viterra, 671 F.3d at 1362. Thus, there is no way to tell if the panel even realized any of these arguments had been made or if the evidence existed, let alone if any of it was given fair consideration. This does not comply with DuPont or Due Process. Id., 476 F.2d at 1362.

E.    CONCLUSION

The panel below weighed the large numbers of closer marks in use in the same field of service under the sixth *DuPont* factor and the extreme care consumers exercise in consuming legal services in IP under the fourth *DuPont* factor against a likelihood of confusion. These findings were well supported. Had it followed the legal procedure for comparing marks under the first *DuPont* factor, the panel would have concluded that factor also weighed against a likelihood of confusion. Further, had it properly considered the entire record, the third, eighth, ninth, and twelfth factors would have weighed against a likelihood of confusion as well. Thus, this court should reverse the finding of likelihood of confusion, because upon weighing the relevant *DuPont* factors *de novo*, the only reasonable conclusion is that Opposer has carried a small minority of the factors and failed to meet its burden of proving a likelihood of confusion. *See* Jack Wolfskin, 14-1789 slip op. at 17 (reversing likelihood of confusion determination based on improper dissection under first *DuPont* factor alone.)


Dated: November 2, 2015                    Respectfully submitted,
                                           Ryan Alley Intellectual Property Law,
                                           By: /s/Ryan E. Alley
                                                Ryan E. Alley
                                                PO Box 3698
                                                Arlington, VA 22203
                                                (571) 335-7300 (Telephone)
                                                (571) 732-1878 (Facsimile)
                                                ryan@alleylegal.com

                                           Appellant

# ADDENDUM

## TABLE OF CONTENTS

Opinion, Trademark Trial and Appeal Board,
     Mailed May 22, 2015.....................................................................................A00001-24

> **This Opinion is Not a
> Precedent of the TTAB**

Hearing: May 13, 2015                                          Mailed: May 22, 2015

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*Innovation Law Group, Ltd.*

*v.*

*Alley*

_____

Opposition No. 91202418

_____

Neil D. Greenstein of Techmark for Innovation Law Group, Ltd.

Ryan E. Alley of Ryan Alley Intellectual Property Law for Ryan E. Alley.

_____

Before Bergsman, Shaw and Goodman,
   Administrative Trademark Judges.

Opinion by Bergsman, Administrative Trademark Judge:

   Ryan E. Alley ("Applicant") seeks registration on the Principal Register of the

mark BUILDING ASSETS FROM IDEAS (in standard characters) for "legal

services in intellectual property, including patent, trademark, copyright, and trade

secret procurement, transfer, and enforcement," in Class 45.[1]

---

[1] Application Serial No. 85342228 was filed on June 9, 2011, based upon Applicant's claim
of first use anywhere at least as early as May 26, 2011 and use in commerce since at least
as early as June 2, 2011.

Innovation Law Group, Ltd. ("Opposer") opposed the registration of Applicant's mark on the ground of likelihood of confusion pursuant to Section 2(d) of the Trademark Act of 1946, 15 U.S.C. § 1052(d), alleging that Applicant's mark is likely to cause confusion with its previously registered marks listed below:

1. Registration No. 2090854 for the mark TRANSFORMING IDEAS INTO BUSINESS ASSETS (typed drawing form) for "legal services relating to intellectual property law and strategy," in Class 42;[2]

2. Registration No. 3129158 for the mark TRANSFORMING IDEAS INTO BUSINESS ASSETS (standard characters) for the services listed below:

> Business consultation in the field of intellectual property issues, innovation management, corporate formation, development and launching of new products, processes and services and transactions involving intellectual property assets, in Class 35; and

> Consultation services in the fields of new product development, technology transfer, protection and licensing of intellectual property, and patent and industrial property licensing, in Class 42;[3] and

3. Registration No. 3215068 for the mark INNOVATION LAW GROUP TRANSFORMING IDEAS INTO BUSINESS ASSETS and design, shown below, for "business consultation services in the field of business performance and strategy," in Class 35.[4]

---

[2] Registered August 26, 1997; renewed. Prior to November 2, 2003, "standard character" drawings were known as "typed" drawings. A typed mark is the legal equivalent of a standard character mark. TMEP § 807.03(i) (January 2015).

[3] Registered August 15, 2006; Sections 8 and 15 affidavits accepted and acknowledged.

[4] Registered March 6, 2007; Sections 8 and 15 affidavits accepted and acknowledged.

# INN**⊙**VATION LAW GROUP
### TRANSFORMING IDEAS INTO BUSINESS ASSETS

Applicant, in his Answer, denied the salient allegations in the Notice of Opposition.

## I.    Preliminary Issues.

### A.  Stipulation for testimony affidavits or declarations in lieu of depositions.

On October 24, 2013, the parties filed a stipulation to use affidavits or declarations in lieu of depositions.[5] The stipulation was approved in an Order dated October 31, 2013.[6]

### B.  Applicant's cross-motion to perfect his declarations.

On March 17, 2014, Opposer filed a motion to strike Applicant's declarations on the ground that they were not properly verified as being under oath.[7] In response, Applicant moved for leave to properly execute his declarations.[8] In an Order dated June 30, 2014, the Board granted Applicant's cross-motion for leave to properly execute his declarations.[9] Applicant refiled properly executed declarations on July 15, 2014.[10]

---

[5] 35 TTABVUE. Citations to the record in this opinion are to the TTABVUE docket entry number and the electronic page number where the document or testimony appears.

[6] 37 TTABVUE.

[7] 46 TTABVUE.

[8] 47 TTABVUE.

[9] 56 TTABVUE. The Board's Order and Opposer's Brief on the case, where Opposer renewed his objection to the admissibility of Applicant's declarations crossed in the mail. For purposes of clarity, the Board reiterates the holding in its June 30, 2014 Order.

[10] 60 TTABVUE and 61 TTABVUE.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 2d day of November, 2015, I have electronically filed the

foregoing with the Clerk of the Court using the appellate CM/ECF system. Counsel

for all parties to the case are registered CM/ECF users and will be served by the

appellate CM/ECF system.


Dated: November 2, 2015           Ryan Alley Intellectual Property Law,
By: /s/Ryan E. Alley

                          Ryan E. Alley
                          PO Box 3698
                          Arlington, VA 22203
                          (571) 335-7300 (Telephone)
                          (571) 732-1878 (Facsimile)
                          ryan@alleylegal.com

                          Appellant

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.      This brief complies with the type-volume limitation of Federal Rule of

Appellate Procedure 32(a)(7)(B). The brief contains 7,204 words, excluding the

parts of the brief exempted by Federal Rule of Appellate Procedure

32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Federal Rule of

Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of

Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally

spaced typeface using Microsoft Word in 14-point Garamond type.

Dated: November 2, 2015                    Ryan Alley Intellectual Property Law,
                                           By: /s/Ryan E. Alley
                                                Ryan E. Alley
                                                PO Box 3698
                                                Arlington, VA 22203
                                                (571) 335-7300 (Telephone)
                                                (571) 732-1878 (Facsimile)
                                                ryan@alleylegal.com

                                                Appellant